1

2

3

4

5

6

7

8

9

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

10

11

12

13

14

15

GENARO C. MARTINO,                    )
                                      )
                Petitioner,           )        Case No. 3:02-cv-00544-LRH-RAM
                                      )
vs                                    )
                                      )            ORDER
MICHAEL BUDGE, et al.,                )
                                      )
                Respondents.          )
_____)

16

17

18

19

        Before the court are petitioner's Second Amended Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody (docket #46), respondents' Answer (docket #57) and petitioner's Reply (docket #68).  For the reasons stated below, petitioner's habeas corpus petition will be denied.

20

**A.      Background**

21

        <u>Initial State Court Proceedings</u>

22

23

24

25

        On December 1, 1991, Petitioner married Patricia LaFollette Martino. On December 31, 1991, she went missing.  Mrs. Martino was never located and her body was never found.[1]  In May of 1994, petitioner was charged with murder, three counts of forgery and preventing or dissuading a witness.  Exhibit 5.   At trial, conducted March 20, 1995 through March 24, 1995, he was convicted on three

26

_____

        [1]Petitioner questions whether Ms. Lafollette Martino is deceased.

counts of forgery, but the jury was unable to reach a unanimous decision on the murder charge.  Exhibit 40.[2]   A retrial on the murder charge was set for July 17, 1995.  Exhibit 42.  The trial date was later continued on the prosecution's motion, which indicated the state's primary witness could not be located.  Exhibits 43 and 44.

On August 16, 1995, a Second Amended Information was filed.  It charged petitioner with murder and preventing or dissuading a witness or victim from reporting or commencing prosecution of a crime. Exhibit 49.  Thereafter, on August 31, 1995, the State moved to use the prior testimony of James Brasington, the primary witness, at the trial scheduled to commence on September 18, 1995, indicating they had been unable to acquire his personal attendance.  Exhibit 51.  According to the motion, the State was unaware of Brasington's location and could not say if he was alive, dead, or avoiding or refusing to testify.  *Id.*  The motion further indicated Brasington was out of state, but that the State was "unaware of his location."  *Id.*  The motion was granted on the day the second trial commenced.  Exhibit 56, p. 6.

Three days before the scheduled start of trial, petitioner's counsel filed a motion for change of venue citing pre-trial publicity detrimental to the defense.  Exhibit 53.  Counsel cited to  published statements of Robert Lane, the Nye County District Attorney, who told newspaper reporters,

> [t]he jurors, who were deadlocked at 7-5 to convict, told him they doubted Brasington's veracity and questioned his claims that he was afraid of Martino, especially because the two spent time together after LaFollette disappeared. "They couldn't understand how (Brasington) could hang out with Martino afterward, unless he was a part of it."

*Id.* The newspaper article quoting the prosecuting attorney appeared two months prior to the retrial date.

The retrial commenced on September 18, 1995 and on September 21, 1995, the jury returned a verdict of guilty on the charge of murder in the first degree.  Exhibit 61, p. 697.  Petitioner was acquitted on the charge of preventing or dissuading a witness.  *Id.*

---

[2] The exhibits referenced in this order were submitted by petitioner in support of his second amended petition.

1  Petitioner waived his right to be sentenced by the jury and was sentenced by the court to life

2  without the possibility of parole on the murder charge and to concurrent eight-year term for each of the

3  three forgery conviction obtained in the first trial.  Exhibit 65.  The forgery sentences were ordered to

4  be served consecutive to the life sentence.  *Id.*  The judgment of conviction was entered on December

5  6, 1995.  Exhibit 66.  During all pre-trial and trial proceedings, petitioner was represented by Harold

6  Kuehn.

7  Following his conviction, Petitioner timely appealed with the court appointing David A. Huff

8  as counsel.  Exhibits 71 and 72.  The appeal raised two grounds for relief: (1) "Whether or not the

9  district court erred in permitting the use of the prior testimony of James Brasington in the second trial

10  of appellant; and (2) Whether the evidence presented was sufficient to establish jurisdiction of the court

11  over the offense alleged in Count II (Forgery).  Exhibit 78.  The Nevada Supreme Court dismissed the

12  appeal on January 22, 1998.  Exhibit 82.

13  On January 4, 1999, Petitioner filed a state post-conviction habeas corpus petition.  Exhibits 89.

14  The pro se petition raised five allegations of ineffective assistance of trial counsel, three claims of

15  ineffective assistance of appellate counsel, a claim the court violated federal statutes and state judicial

16  canons in allowing the Brasington testimony to come in at both trials, and a claim attacking the

17  sufficiency of the evidence of jurisdiction over Count II of the Information.  *Id.*  The court appointed

18  counsel to assist petitioner and a supplemental petition was filed raising four additional claims: there

19  was no *Petrocelli* hearing regarding the collateral offenses of fraudulent use of a credit card; there was

20  no *Petrocelli* hearing regarding the collateral offenses of forgery at the second trial for murder; no jury

21  instruction was given  nor argument made regarding community property as related to intent to defraud,

22  and the jury instruction on implied malice was improper and violated Nevada law.   Exhibit 98.  The

23  state district court held a hearing on the petition.  Exhibit 100.  On March 17, 2000, the court denied

24  petitioner's claims.  Exhibit 101.  Petitioner appealed the state district court's decision, and the Nevada

25

26

3

1  Supreme Court, without ordering briefing or oral argument  filed an order of affirmance on September

2  16, 2002. Exhibit 110.

3       <u>Initial Federal Proceedings</u>

4       On October 13, 2002, Petitioner submitted his first federal habeas petition in this court.  Docket

5  #8. The federal public defender's office was appointed to represent petitioner and an amended petition

6  was filed on December 18, 2003.  Docket #19. Upon a motion to dismiss filed by respondents, the court

7  found Ground 2(A) to be unexhausted.  The matter was stayed on petitioner's motion made under *Rhines*

8  *v. Weber,* and petitioner returned to state court to exhaust ground 2(A). Dockets #39 and #41.

9       Petitioner returned to state court to exhaust his claim, and then filed a motion to re-open his

10  federal habeas case.  Petitioner's amended federal habeas petition contains three grounds for relief.

11  Docket #46.  Respondents answered and Petitioner filed a reply.  Dockets # 57 and  #68.  The court has

12  reviewed the documents filed by the parties, as well as the full record from the state courts as  presented

13  in this case.

14  **B.**    **Analysis**

15       <u>Overriding Standard</u>

16       Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), at 28 U.S.C. § 2254(d),

17            An application for a writ of habeas corpus on behalf of a person in custody
18  pursuant to the judgment of a State court shall not be granted with respect to any claim
          that was adjudicated on the merits in State court proceedings unless the adjudication of
19  the claim –

20            (1) resulted in a decision that was contrary to, or involved an unreasonable
application of, clearly established Federal law, as determined by the Supreme Court of
21  the United States; or
          (2) resulted in a decision that was based on an unreasonable determination of the
22  facts in light of the evidence presented in the State court proceeding.

23       The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in

24  order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the

25  extent possible under law."  *Bell v. Cone,* 535 U.S. 685, 693-694 (2002).  A state court decision is

26

1   contrary to clearly established Supreme Court precedent, within the meaning of § 2254 "if the state court

2   applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state

3   court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court]

4   and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v.*

5   *Andrade,* 538 U.S. 63, 73 (2003)*, citing Williams v. Taylor,* 529 U.S. 362, 405-406 (2000); *Bell v. Cone,*

6   535 U.S. at 694.

7       Furthermore, a state court decision is an unreasonable application of clearly established Supreme

8   Court precedent "if the state court identifies the correct governing legal principle from [the Supreme

9   Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer,*

10   538 U.S. at 73.   The "unreasonable application" clause requires the state court decision to be more than

11   merely incorrect or erroneous; the state court's application of clearly established federal law must be

12   objectively unreasonable.  *Id.*  The state court's factual determinations are presumed to be correct, and

13   the petitioner has the burden of rebutting that presumption by clear and convincing evidence.  *See* 28

14   U.S.C. § 2254(e)(1).

15       **Ground 1**

16       Petitioner claims that the trial court erred in the second trial in allowing the use of James

17   Brasington's testimony from the first trial, due to his unavailability.  Under the claim, this error  denied

18   petitioner his right to confrontation, due process of law and a fair trial as guaranteed by the Sixth and

19   Fourteenth Amendments.  Petitioner argues that the prosecutor made inadequate efforts to obtain the

20   witness' presence and that there was insufficient indicia that the prior testimony was trustworthy or

21   reliable to permit its use at the second trial.   Petitioner points out that he was not convicted on the

22   murder charge in the first trial because the jury deadlocked 5 to 7 on that charge.  He points to the

23   prosecutor's statements in the press that the use of the transcripts might be better than the live witness,

24   particularly since the original jury found Brasington's testimony to be incredible.  *See,* Exhibit 55.

25   Petitioner argues that the state made only perfunctory efforts to locate Brasington before the second trial

26

5

1    and that it failed to make a sufficient showing of a good-faith effort to find him.  Petitioner attacks the

2    affidavit presented to support the state's motion to use the transcript, highlighting its lack of personal

3    knowledge by the affiant, its lack of specifics about who in the police offices made the attempts to locate

4    the witness, and the absence of live witnesses at the hearing who could have testified and been cross-

5    examined as to the extent of the efforts made to locate Brasington.  *See* Exhibit 43.

6                             Expansion of the Record

7              Petitioner  presents an affidavit of Michael R. Wysocki, an investigator employed by the office

8    of the Federal Public Defender, in support of Ground One.  Exhibit 111.  This affidavit outlines the

9    investigator's efforts to determine where Mr. Brasington was at the time of the second trial and who

10   knew of those whereabouts.  *Id.* The affidavit suggests that the witness could have been located if police

11   had contacted his parents or his employer.  Respondents argue the Nevada Supreme Court's factual

12   determination are entitled to a presumption of correctness and oppose the use of the affidavit on the basis

13   of section 2254(2)(e)'s requirements for admitting new evidence into the record.

14             A state court's findings of fact are entitled to a presumption of correctness absent clear and

15   convincing evidence of an error presented by the petitioner.  28 U.S.C. § 2254 (e)(1).  The ability to

16   present such evidence for the first time in these federal proceedings is limited.  While Rule 7(b) of the

17   Rules Governing Section 2254 Cases ("Habeas Rules") allows the court to direct the parties to expand

18   the record with such items as letters predating the filing of the petition, documents, exhibits and

19   affidavits, the court is limited in its ability to allow for the expansion of the record by 28U.S.C. §

20   2254(e)(2).  *See, Holland v. Jackson,* 542 U.S. 649, 652-653 124 S.Ct. 2736, 2738 (2004)(restrictions

21   of §2254(e)(2) apply where petitioner seeks relief based on new evidence without an evidentiary

22   hearing).  Under section 2254(e)(2),

23             If the applicant has failed to develop the factual basis of a claim in State court
              proceedings, the court shall not hold an evidentiary hearing on the claim unless the
24             applicant shows that

25                      (A)      the claim relies on –

26                                                6

1          (i)     a new rule of constitutional law, made retroactive to cases on
2                    collateral review by the Supreme Court, that was previously unavailable; or

3          (ii)    a factual predicate that could not have been previously
4                    discovered through the exercise of due diligence; and

     (B)    the facts underlying the claim would be sufficient to establish by clear
5                and convincing evidence that but for constitutional error, no
6                reasonable factfinder would have found the applicant guilty of the underlying offense.

7  Thus, only if a Petitioner exercised diligence in his efforts to develop the factual basis of his claims in

8  state court proceedings will the new evidence may be admitted.  *Id., see also, Cooper-Smith v.*

9  *Palmateer,* 397 F.3d 1236, 1241 (9th Cir. 2004).

10       Relying on *Dres v. Campoy,* 784 f.2d 996 (9th Cir. 1986), petitioner argues that section

11  2254(e)(1) does not preclude the admission of the affidavit because the question of unavailability for

12  purposes of the Confrontation Clause is a mixed question of law and fact subject to *de novo* review.

13  Petitioner further argues that 28 U.S.C. § 2254 (e)(2) does not preclude use of the affidavit because it

14  is not "new evidence," merely a report containing the details of Mr. Wysocki's investigation and "an

15  averment of his expert opinion" which does not "fundamentally alter the record in any way."  Reply

16  (docket #68), p. 18.

17       Petitioner is wrong on both counts.  First, *Dres supra.,* predates the AEDPA, which was passed

18  by Congress in order to limit the federal courts' *de novo* review of claims of federal constitutional

19  violations alleged in state criminal proceedings.  *Conference Committee Report*, H.R. Conf. Rep. 104-

20  519, 94th Cong., 2d Sess. 111 (1996); *see also, Ward v. Sternes,* 334 F.3d 696, 702  (7th Cir. 2003).

21  Second, the affidavit does, in fact, "fundamentally alter" the record by demonstrating what the state

22  should have or could have done to locate the missing witness.  Unlike petitioner's example of a report

23  explaining problems with IQ scoring, this "report" does not assist the court in determining the weight

24  the district attorney's affidavit should be given; rather, it counters factual assertions made by the

25  prosecutor offering new evidence of what information was available, had the prosecutor looked.

26

1    Petitioner did not develop these facts before the state court and  fails to demonstrate cause for

2    this default, as required by § 2254(e)(2)(A)(ii).  While the court agrees the transcript testimony admitted

3    in the second trial was prejudicial to petitioner, it was incumbent upon him to present the issue and the

4    facts supporting it to the state court for its review and consideration.  This he has failed to do.  See,

5    Exhibit 100, pp. 10-11(at the state post-conviction evidentiary hearing, counsel recognizes the issues of

6    Brasington's availability,  but does not present any evidence and, in fact, states "that there is no issue

7    there.") Counsel's failure is not an impediment external to the defense in this post-conviction review.

8     Because petitioner has not met the criteria set forth in 28 U.S.C. § 2254(e)(2), as required under *Holland*

9    *v. Jackson* and *Cooper-Smith v. Palmeteer,* the new evidence he presents to this court cannot now be

10   considered.[3]

11                              Ground One Merits Review

12    The United States Supreme Court has found that the right to confront witnesses serves three

13   purposes (1) to insure reliability by means of oath, (2) to expose the witnesses to cross-examination, and

14   (3) to permit the trier of fact to weigh the demeanor of the witnesses. *California v. Green,* 399 U.S. 149,

15   158, 90 S.Ct. 1930, 1935 (1970).  However, a defendant's right to confront witnesses is not absolute.

16   *Barber v. Page,* 390, U.S. 719, 722, 88 S.Ct. 1318, 1320 (1968).  If a witness is unavailable, i.e., his

17   attendance at the hearing cannot be obtained because he is beyond the reach of the state's process, is

18   hiding, dead, or otherwise uncooperative, prior trial or preliminary hearing testimony is admissible so

19   long as the defendant had an adequate opportunity to cross-examine the witness at the prior proceeding.

20   *See Mancusi v. Stubbs*, 408 U.S. 204, 213-216, 92 S.Ct. 2308  (1972);  *California v. Green*, 399 U.S.

21   at 165-168.

22    Here, the prosecutor moved to admit the prior testimony of Brasington and attached a sworn

23   affidavit that the witness could not be located and was, therefore, unavailable. Exhibit 51.  Additionally,

24   the State sought a warrant for  the detention of Brasington as a material witness.  This request further

25   _____

26       [3] This includes exhibits 111, 112, 113, and 114.

8

demonstrated the State's efforts to locate and contact Brasington for his appearance at the second trial. Exhibit 45.  Petitioner had an opportunity to argue against admission of the prior testimony and to object to the absence of specific facts he now alleges were missing from the affidavit and the hearing.  *See* Exhibits 52 and 56.  Finally, it is undisputed that petitioner had a previous opportunity to cross-examine the witness at the first trial and that his reasons and goals in doing so were identical to those in the second trial.

Petitioner's argument that the inability to view the witness' demeanor likely had some impact on the jury's view of Brasington's testimony is not lost on the court.  However, petitioner has failed to meet his burden in showing that the state court's determinations were unreasonable or wrong within the confines of § 2254.  In deciding this claim for relief, the Nevada Supreme Court reviewed the Nevada statute applicable to admitting former testimony, NRS 171.198(6), which allows for such admission so long as the defendant was represented by counsel or affirmatively waived that right, where the missing witness is "sick, out of state, dead, or persistent in refusing to testify despite an order of the judge to do so, or when his person attendance cannot be had in court."  Exhibit 82.  The Nevada Supreme Court found that the prior testimony had been properly admitted because the affidavit of the prosecutor was sufficient to demonstrate Brasington was "in fact unavailable to testify at the second trial" and that the affidavit amply demonstrated the State's due diligence in attempting to locate Brasington.  *Id.*  The state court's decision is not contrary to the holdings of *Mancusi v. Stubbs* or *California v. Green*, *supra.*  Neither is the decision unreasonable in light of the evidence before that court.  Ground one shall be denied.

### Ground Two

In this ground for relief, petitioner contends that he was denied the effective assistance of trial counsel as guaranteed by the Sixth and Fourteenth Amendments, claiming counsel (A) failed to adequately investigate the case; (B) failed to subpoena witnesses for the second trial; (C) failed to demand a *Petrocelli* hearing regarding collateral offenses related to credit card use; (D) failed to request

a *Petrocelli* hearing for the prior forgery convictions; (E) failed to request a community property jury instruction; and (F) failed to object to an improper implied malice jury instruction.

### Procedural Default

Respondents argue that Ground Two (A) is procedurally barred, as it was raised in petitioner's second post-conviction petition and denied on independent state law grounds.  A claim that was denied by the state court on independent and adequate state law grounds cannot be reviewed on its merits by this court unless petitioner can show cause for the procedural default and prejudice.  *Coleman v. Thompson*, 501 U.S. 722 (1991)*; see also Murray v. Carrier*, 477 U.S. 478, 485 (1986).

Petitioner responds that this claim was not procedurally barred because the Nevada Supreme Court stated in deciding the second post-conviction petition appeal that it had previously considered a more general claim that counsel was ineffective for failing to investigate and had denied that claim on its merits, making that decision the "law of the case."  *Cf.*  Exhibits 108 and 127.   Petitioner further argues that NRS 34.726(1) and NRS 34.810 are not adequate state law grounds because the Nevada Supreme Court has "at times overlooked the bar," and that respondents should be judicially estopped under *Russell v. Rolfs,* 893 F.2d 1033, 1037 (9th cir. 1990), from arguing the claim is procedurally defaulted when they previously argued the claim was not exhausted.   Petitioner also argues cause and prejudice and a fundamental miscarriage of justice.

### *There Was a Procedural Default in State Court*

The instant claim was presented to the state court in its present form in a second state post-conviction petition. Exhibit 115.  The petition was dismissed by the state district court which considered the merits of the claim, but also noted the Nevada Supreme Court's decision on appeal rejecting the claim.  *Id.*  Petitioner appealed (Exhibit 121) and the state district court's decision was affirmed.  Exhibit 127.  In that Order, the Nevada Supreme Court recognized that petitioner had raised a "more general claim" that counsel was ineffective for failing to investigate and that the claim had been denied on its merits.  *Id.* at 2.  The Nevada Supreme Court declared the decision to be the "law of the case" which

1   could not be "avoided by a more detailed and precisely focused argument subsequently made...."  The

2   court continued its analysis finding the petition to be untimely under NRS 34.726(1) and  successive

3   under NRS 34.810(2), making it "procedurally barred," and that petitioner had not overcome that

4   procedural bar.  *Id.*

5        In *Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038 (1989), the United States Supreme Court

6   determined that a state court need not fear reaching the merits of a claim in an alternative holding, after

7   finding a claim or petition to be procedurally barred from review on some independent and adequate

8   state law basis because

9        [b]y its very definition, the adequate and independent state ground doctrine requires
         the federal court to honor a state holding that is sufficient basis for the state court's
10       judgment, even when the state court also relied on federal law.

11   *Id.* 489 U.S. at 264, n. 10; 109 S.Ct. at 1044.  Thus, even if the court found that a more general but

12   similar claim had been previously decided and rejected on its merits, this particular claim was found to

13   be untimely and successive - a procedural bar to its review by this court.

14       *The Procedural Default Was an Independent and Adequate State Law
         Ground for the Nevada Supreme Court's Disposition of Petitioner's
15       Claims.*

16       In order for a state procedural rule to serve as an adequate state ground, it must be regularly

17   followed by the state courts. "[A] state procedural ground is not 'adequate' unless the procedural rule

18   is 'strictly or regularly followed.'"  *Johnson v. Mississippi*, 486 U.S. 578, 587, 108 S.Ct. 1981  (1988)

19   (citation omitted); *see also Poland v. Stewart*, 169 F.3d 573, 585 (9th Cir.1999) ("A state procedural rule

20   constitutes an adequate bar to federal court review if it was 'firmly established and regularly followed'

21   at the time it was applied by the state court." (quoting *Ford v. Georgia*, 498 U.S. 411, 424, 111 S.Ct. 850

22   (1991)).  Contrary to petitioner's argument, the Ninth Circuit Court of Appeals has held application of

23   NRS 34.726(1) to be an independent and adequate state ground.  *See Moran v. McDaniel*, 80 F.3d 1261,

24   1268-70 (9th Cir. 1996).  It has further held that, at least in non-capital cases,  NRS 34.810(2) is also an

25   independent and adequate state ground for denial of a petition or claim.  *See Bargas v. Burns*, 179 F.3d

26

11

1207, 1210-12 (9th Cir. 1999) ("Nevada follows a strict rule: A petitioner must raise all claims in his first habeas petition in order to avoid the penalty of procedural default."), *cert. denied*, 529 U.S. 1073 (2000); *see also Petrocelli v. Angelone*, 248 F.3d 877, 886 (9th Cir. 2001) (distinguishing capital and non-capital cases); *Valerio v. Crawford*, 306 F.3d 742 (9th Cir. 2002) (same).

Thus, the procedural bar applied by the state court is adequate to deny this court's review of the merits of this claim unless petitioner can show cause and prejudice to overcome the bar or can demonstrate that failure to review the claim will result in a fundamental miscarriage of justice.

*Applicability of Russell v. Rolfs*

Judicial estoppel, as discussed in *Russell v. Rolfs,* 893 F.3d 1033 (9th Cir. 1990) disallows a respondent from "taking different legal positions in state and federal court in order to create a procedural default that would otherwise bar a habeas petition." *Whaley v. Belleque,* 520 F.3d 997, 1002 (9th Cir. 2008). However, that is not what occurred here. Here, respondents originally argued to this court that the claim was not exhausted. When petitioner returned to state court, respondents argued the claim on the merits and on the basis of the doctrine of law of the case, which, as petitioner points out, is not a procedural bar to federal review. *See* Reply brief (docket #68), p. 26. Thus, judicial estoppel cannot be imposed against respondents in this instance.

*Petitioner Cannot Show Cause or Prejudice To Overcome Procedural Bar*

To demonstrate "cause" for his procedural default, petitioner must present his reasons for failing to comply with Nevada's procedural rules. Specifically, before this court may review them on the merits he must explain why the specific facts supporting the claim were not raised in an earlier state court proceeding. In general, "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some *objective factor external to the defense impeded*...efforts to comply with the state procedural rules." *Murray v. Carrier*, 477 U.S. 478, 488 (1986) (emphasis added). Examples of such external factors include the discovery of new evidence, a change in the law, and interference by state officials. *Id. See also Buffalo v. Sunn*, 854 F.2d 1158, 1163 (9th Cir. 1988).

12

1   Petitioner argues that the procedural bar should be excused because he received ineffective assistance

2   of trial and appellate counsel, who did not "protect[] and pursu[e] Mr. Martino's rights."  Reply, p. 32.

3   While the ineffective assistance of appellate counsel can, in certain circumstances, be cause to overcome

4   a procedural bar to federal review of a habeas claim, *Murray*, 477 U.S. at 488, trial counsel's

5   performance cannot logically contribute to cause for a procedural default that occurred in post-conviction

6   proceedings.

7   Neither can appellate counsel's performance act as cause in this instance because, under Nevada

8   law, claims of ineffective assistance of counsel can only be brought in a post-conviction petition for writ

9   of habeas corpus, not on direct appeal.  *Pellegrinin v. State*, 117 Nev. 860, 882-883, 34 P.3d 519, 534

10  (2001).  Thus, petitioner has failed to show that counsel's trial or appellate performance was cause to

11  overcome the procedural bar to federal review of ground 1(A).

12                          *No Showing of a Fundamental Miscarriage of Justice*

13  Petitioner next argues that because there was no physical evidence of a murder – that neither Mrs.

14  LaFollette Martino or her remains have been located, because Brasington's testimony at the first trial

15  was not sufficient to result in a conviction, and because the district attorney made comments to the press

16  that it might be okay to use the transcripts instead of a live witness, petitioner has made a colorable

17  showing of actual innocence.  This court finds that these facts do not add up to such a showing.

18  Petitioner presents no positive evidence that he is innocent.  For example, he does not provide the court

19  with sworn statements from Brasington or any other witness showing the testimony given at trial or

20  testimony available, but not offered, would have resulted in a different outcome.[4]

21

22  _____

23      [4] The court acknowledges the affidavits of Linda Borowick and Daniel Borowick which
    contradict one point in Brasington's trial testimony relevant to the time when Brasington informed the

24  Borowicks of his concern about the fighting between Martino and his wife.  The court also
    acknowledges the affidavit of Anthony Joseph Perchetti related to a bridge constructed by Martino which

25  the police suspected as a location for Mrs. Lafollette Martino's remains.  However, as previously noted
    these documents are not properly part of the record, petitioner having failed to meet the requirements

26  of section 2254(2).

1       For the foregoing reasons, petitioner has failed to overcome the procedural bar which prevents

2  this court from reviewing Ground Two (A) on its merits

3                  **Ground Two (B)**

4       In Ground Two (B), petitioner claims his counsel was ineffective because he failed to subpoena

5  witnesses for the second trial.  Specifically, petitioner notes that counsel presented some twenty

6  witnesses during the first trial who testified regarding petitioner's truthfulness and as to Brasington's

7  untruthfulness.  In that trial, petitioner was not convicted on the murder charge when the jury could not

8  reach a unanimous verdict.  In the second trial, petitioner asserts that counsel's decision to call only three

9  witnesses to testify regarding petitioner's truthfulness and Brasington's untruthfulness was deficient, as

10  evidenced by petitioner's conviction on the murder charge. Petitioner contends that counsel "threw in

11  the towel" in the second trial.

12       Ineffective assistance of counsel claims are governed by the two-part test announced in

13  *Strickland v. Washington,* 466 U.S. 668 (1984).  In *Strickland,* the Supreme Court held that a petitioner

14  claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made

15  errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth

16  Amendment, and (2) that the deficient performance prejudiced the defense. *Williams v. Taylor,* 529 U.S.

17  362, 390-391 (2000), *citing Strickland,* 466 U.S. at 687.  To establish ineffectiveness, the defendant must

18  show that counsel's representation fell below an objective standard of reasonableness. *Id.*  To establish

19  prejudice, the defendant must show that there is a reasonable probability that, but for counsel's

20  unprofessional errors, the result of the proceeding would have been different.  *Id.*  A reasonable

21  probability is "probability sufficient to undermine confidence in the outcome." *Id.*  Additionally, any

22  review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective

23  at the time of the challenged conduct, in order to avoid the distorting effects of hindsight.  *Strickland,*

24  466 U.S. at 689.  It is the petitioner's burden to overcome the presumption that counsel's actions might

25  be considered sound trial strategy.  *Id.*

26

In considering this claim, the Nevada Supreme Court applied the *Strickland* standard for reviewing counsel's performance and concluded that petitioner had  failed to show that bringing the additional 17 witnesses was error, because he "failed to demonstrate what these witnesses would have testified to and/or how their testimony would have changed the results of the trial. Exhibit 108.  Without specifics about the missing testimony, petitioner has not met his burden to show prejudice.  General allegation that the witnesses would have testified by the petitioner's and the primary witnesses truthfulness are insufficient.  The Nevada Supreme Court's decision on this claim is not an unreasonable or contrary application of *Strickland.*  Neither is it an unreasonable determination of a factual question. Petitioner is not entitled to relief from this court on this claim.

**Ground Two (C) and (D)**

In these two subparts of Ground Two, petitioner complains that counsel was ineffective in failing to request a *Petrocelli*[5] hearing on two issues: the admission of petitioner's unauthorized use of his wife's credit card and the admission of the forgery convictions obtained in the first trial.  Petitioner contends the evidence should not have been allowed in because it was merely prejudicial, without probative value.  Petitioner further alleges that the hearing on counsel's motion to exclude the forgery convictions was insufficient because they were used merely to bolster the murder case.  *See* Exhibit 56, pp. 27-32.

The admission of evidence of other bad acts is a question of evidentiary law.  Under Nevada state law and federal law, evidence of other bad acts is inadmissible to prove the defendant acted in conformity with his "character" as evidenced by the prior bad acts.  *See* NRS 48.045; Federal Rules of Evidence (F.R.E.) 404(b).  However, such evidence is admissible to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.  *Id.*   Both systems' rules of evidence require prior notice to the defense of the general nature of the evidence prosecution intends to present.  *Id; Tinch v. State,* 113 Nev. 1170, 1176, 946 P.2d 1061, 1064-65 (1997).  Petitioner

---

[5] *Petrocelli v. State,* 692 P.2d 503 (1985).

argues that counsel was obligated to request a hearing before trial to allow the court to decide whether the evidence was probative and admissible.  This was petitioner's second trial conducted within months of the first trial at which the same evidence was admitted against him following hearings in line with *Petrocelli*.  *See e.g.,* Exhibits 27, 29, 034, pp. 10-25, and 35, pp. As a result, counsel could have anticipated a similar outcome on a *Petrocelli* hearing at the second trial , a strategic decision.  Moreover, the Nevada Supreme Court reviewed the claims and found that, while there was no *Petrocelli* hearing at the second trial, its absence was not necessarily a violation of petitioner's rights, so long as the petitioner did not suffer prejudice from the admission of the evidence.  The court concluded:

> However, the failure to conduct a *Petrocelli* hearing is not always reversible error.  For example, if the result of the trial would have been the same if the evidence was withheld then the failure to conduct a *Petrocelli* hearing is harmless error. [fn 10: *See Qualls v. State,* 114 Nev 900, 903-04, 961 P.2d 765, 767 (1998).] Here, assuming without deciding that a *Petrocelli* hearing was necessary regarding the fraudulent use of the victim's credit cards, appellant was not prejudiced.  The result of the trial would have been the same if the prior bad acts had not been admitted because of the persuasive evidence presented during the trial.  Specifically, there was an eyewitness to the murder who testified at trial.  Thus, counsel was not ineffective in this regard.

> Fifth, appellant claims that his counsel was ineffective at appellant's second trial for failing to request a *Petrocelli* hearing regarding appellant's prior convictions for forgery.  We conclude that the district court did not err in denying this claim.  Even assuming, without deciding that a *Petrocelli* hearing was necessary, appellant was not prejudiced for the reasons discussed above.  Thus, appellant was not prejudiced by counsel's failure to request such a hearing at appellant's second trial.

Exhibit 108.

In its decision, the Nevada Supreme Court reasonably applied the correct federal standard as enunciated by the United States Supreme Court in *Strickland*.  Moreover, the state court's factual determinations are presumed correct and petitioner has provided nothing admissible that shows by clear and convincing evidence that the presumption is not warranted in this instance.

### Ground Two (E)

In Ground Two (E), petitioner claims counsel was ineffective for failing to request a jury instruction regarding community property law in Nevada.  Petitioner argues that since he and Patricia

16

1  LaFollette Martino were married, he could not form the intent to defraud necessary to the forgery

2  convictions.  The Nevada Supreme Court found this claim did not warrant relief because petitioner failed

3  to show how the missing instruction prejudiced him.  Exhibit 108, p. 5. This court agrees. The claim is

4  without merit and the Nevada Supreme Court's decision in that regard cannot be assailed under section

5  2254.

6  **Ground Two (F)**

7  In this claim for relief, petitioner argues that counsel was ineffective for failing to object to the

8  implied malice instruction given at his trial.  Petitioner contends the instruction allowed the jury to draw

9  an impermissible presumption, violating  his due process rights by relieving the state of its burden to

10  prove each element of the offense beyond a reasonable doubt.

11  In this instance, the instruction on implied malice was found by the Nevada Supreme Court to

12  be proper in light of the jury instructions as a whole.  As the court found in *Cordova v. State*  116 Nev.

13  664, 666, 6 P.3d 481, 483 (Nev. 2000) ("where the jury is properly instructed on the presumption of

14  innocence and the State's burden to prove beyond a reasonable doubt every element of the crime

15  charged" no error is present) *citing Doyle v. State*, 112 Nev. 879, 900-02, 921 P.2d 901, 915-16 (1996).

16  The fact that the court in *Cordova* presented an alternative instruction for the use by the criminal courts

17  does not convert the instant instruction to a due process violation.  The jury was instructed about the

18  presumption of innocence and the burden on the State to prove each element of the crime beyond a

19  reasonable doubt.  *See* Exhibit 38.  In light of the necessity that the jury find the killing to have been

20  deliberate, willful and premeditated in order to have reached its conclusion of first degree murder, the

21  Nevada Supreme Court's decision on this claim is not erroneous.

22  **Ground Three**

23  Ground three is a claim that appellate counsel was ineffective in failing to raise on direct appeal

24  the claim that there was insufficient evidence to support petitioner's convictions.

25

26

A defendant/appellant is entitled to the effective assistance of counsel on direct appeal. *Evitts v. Lucey,* 469 U.S. 387, 394, 105 S.Ct. 830, 835 (1985). To succeed on such a claim, petitioner must demonstrate that the claim or claims counsel failed to raise had a reasonable likelihood of success on the merits. *Duhamel v. Collins*, 955 F.2d 962, 967 (5th Cir.1992); *Heath v. Jones*, 941 F.2d 1126, 1132 (11th Cir. 1991).

A claim of insufficient evidence to convict is a proper claim to raise on direct appeal. In determining a claim of insufficient evidence to support a conviction, the court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 307, 99 S.Ct. 2781 (1979). In this instance, the jury was faced with the Brasington's testimony that he actually witnessed the killing of Patricia LaFollette Martino. This evidence, along with the other circumstantial evidence of Mrs. Martino's demise and evidence of petitioner's unrestrained use of her property and money could not result in a finding that no rational trier of fact could find the elements of murder. Thus, appellate counsel was not ineffective for determining that this claim had little likelihood of success on the merits. *Jones v. Barnes,* 463 U.S. 745 (1983).

The Nevada Supreme Court agreed. Applying *Strickland* and *Barnes*, *supra.*, the court held:

> Second, appellant claimed that his appellate counsel was ineffective for failing to argue that there was insufficient evidence presented at trial for the jury to find him guilty of murder. We conclude that the district court did not err in denying this claim. There was an eyewitness to the crime whose prior testimony was admitted during the appellant's murder trial. Thus, appellant failed to demonstrate that his appellate counsel was ineffective in this regard.

Exhibit 108. Petitioner is not persuasive in his argument that counsel was ineffective in this regard. According to Brasington's testimony, he witnessed petitioner argue with, threaten and then strangle Mrs. Martino. *See* Exhibit 34, pp. 27-28, 38-42. Moreover, Brasington offered testimony related to his own assistance with petitioner's efforts to dispose of the body. *Id.,* pp. 52-66. This evidence, if believed, was

18

1    sufficient to find the petitioner guilty of willful, deliberate, and premeditated murder.  This claim lacks

2    merit and the Nevada Supreme Court's decision is appropriate under 28 U.S.C. § 2254.

3                          **Ground Four**

4         In Ground Four, petitioner claims that there was insufficient evidence to convict him of count

5    two, forgery, related to a check that was negotiated in Yuma, Arizona.  Brasington testified  that in

6    Yuma Arizona, petitioner paid the balance owed to Jerry Roundtree on a trailer purchased by his wife

7    with a check evidencing the forged signature of Patricia LaFollette.  Brasington said he believed the

8    check was already written out when it was handed over to Mr. Roundtree.  Exhibit 34, p. 73.  Mr.

9    Roundtree also testified at trial.  His testimony was that while in Yuma, petitioner wrote the check out,

10   but did not sign it in his presence.  Exhibit 58, p. 280.  This testimony leaves open the question of where

11   – and by whom– the check was signed.

12        While this testimony is somewhat conflicting, it is the jury's job to determine the weight and

13   credibility of testimony.  *Walters v. Maass,* 45 F.3d 1355, 1358 (9th Cir. 1995); *see also Schlup v. Delo,*

14   513 U.S. 298, 330 (1995).   This court must assume that the jury resolved any evidentiary conflicts in

15   favor of the prosecution.  *Jackson v. Virginia,* 443 U.S. 307, 326. In that light, the Nevada Supreme

16   Court's decision to deny the claim was appropriate.  Ground Four was properly decided and this court

17   cannot revisit the decision in light of 28 U.S.C. § 2254.

18   **C.    Request for Evidentiary Hearing**

19        For the same reasons as set forth above in denying petitioner's request to expand the record, no

20   evidentiary hearing shall be granted.  28 U.S.C. § 2254(e)(2).  Petitioner was afforded the opportunity

21   to develop the factual bases for his claims during an evidentiary hearing in the state court post-conviction

22   proceedings.  He did not make full use of that opportunity, thus denying the state court a full and fair

23   opportunity to address his claims in light of all the evidence available.

24   / / /

25   / / /

26

**D.      Certificate of Appealability**

In order to proceed with his appeal, petitioner must receive a certificate of appealability.  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski*, 435 F.3d 946, 950-951 (9th Cir. 2006); *see also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001).  Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.*; 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* (quoting *Slack*, 529 U.S. at 484).  In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further.  Id.

Pursuant to the December 1, 2009 amendment to Rule 11 of the Rules Governing Section 2254 and 2255 Cases, district courts are required to rule on the certificate of appealability in the order disposing of a proceeding adversely to the petitioner or movant, rather than waiting for a notice of appeal and request for certificate of appealability to be filed.  Rule 11(a).  This Court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines that none meet that standard.  The Court will therefore deny petitioner a certificate of appealability.

**IT IS THEREFORE ORDERED** that Ground One (A) is **DISMISSED WITH PREJUDICE** as procedurally barred**.**

**IT IS FURTHER ORDERED** that the request for evidentiary hearing and for expansion of the record is **DENIED.**

**IT IS FURTHER ORDERED** that all remaining claims in the Second Amended Petition for Writ of Habeas Corpus (Docket #46) are **DENIED**.

/ / /

1     **IT IS FURTHER ORDERED** that a Certificate of Appealability is **DENIED.**

2     The Clerk shall enter judgment accordingly.

3     Dated this 2nd day of April, 2010.

4

5

6                                                    _____
                                                     LARRY R. HICKS
7                                                    UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26